IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: STERLING FINANCIAL CORPORATION SECURITIES CLASS ACTION | MDL DOCKET NO. 1879<br><br>CIVIL ACTION NO. 07-2171 |

FILED
SEP 11 2009
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## MEMORANDUM

Lawrence F. Stengel, J.                                                                September 10, 2009

### I. INTRODUCTION

Lead Counsel in this securities class action have requested an attorneys' fee award of thirty (30) percent of the settlement fund and reimbursement for out-of-pocket expenses. For the reasons that follow, I will grant counsel's request for a thirty percent attorneys' fee award, but I will require that their expenses be paid out of this fund. The remaining seventy (70) percent of the settlement fund shall be distributed to the class members.

### II. BACKGROUND

Beginning on May 15, 2007, nine securities cases were filed against Sterling and certain officers and directors (four cases were filed in the Southern District of New York and five were filed in this district). The cases all alleged the same facts: Sterling artificially inflated the market price of its stock as a result of the defendants' false and misleading statements in violation of Sections 10(b) and 20(a) of the Securities Exchange

Act of 1934. These actions were consolidated in this court on December 21, 2007. See Consolidation Order, Dec. 21, 2007. Counsel for lead plaintiffs have represented the class members in this case since December 21, 2007 when their clients were appointed lead plaintiffs and they were designated lead counsel. See Id. On February 19, 2008, lead plaintiffs filed a consolidated amended complaint on behalf of all individuals who purchased Sterling stock during the class period (April 27, 2004 through May 24, 2007).

After defendants filed a motion to dismiss which was briefed by both sides, the parties engaged in mediation sessions which resulted in an agreement on October 28, 2008 to settle this case. Carney Aff. at 4. Lead counsel then interviewed Sterling representatives and reviewed documents supplied by Sterling as part of "confirmatory discovery." Id.

On March 6, 2009 I signed an order preliminarily approving the settlement of this case after a hearing in open court. See Order, Mar. 6, 2009. Lead counsel mailed notices to the class members of the settlement and their rights to opt out and object. Notice was also published in Investor's Business Daily. Carney Aff. at 5.

After a settlement hearing on August 5, 2009, I approved the settlement of this securities class action for $10.25 million. On July 23, 2009, lead counsel filed both their motion for final approval of the class action settlement and plan of allocation and an application for award of attorneys' fees and expenses.

## III. DISCUSSION

"[A]ttorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members. The ultimate decision as to the proper amount of attorneys' fees rests with the sound discretion of the court." In re Ikon Office Solutions, Inc., Sec. Litig., 194 F.R.D. 166, 192-93 (E.D. Pa. 2000) (internal citations omitted).

There are two methods for computing the amount of attorneys' fees to be awarded: the lodestar and the percentage method. In a securities case in this district several years ago, the court noted that "flaws [in the lodestar method] have led to the increased use of the percentage method, which permits courts to reward success and penalize failure more directly." In re Ikon Office Solutions, Inc., 194 F.R.D. at 193. In this "paradigmatic common fund case," In re Chambers Dev. Sec. Litig., 912 F.Supp. 852, 860 (W.D. Pa. 1995), the court will follow the method used by courts in this district and apply the percentage method, cross-checked against the lodestar. See Prudential 148 F.3d at 333; In re Computron Software, Inc., 6 F.Supp.2d 313, 322 (D. N.J. 1998); In re Ikon, 194 F.R.D. at 193.

The total value of the settlement fund is $10.25 million. The issue is whether thirty percent ($3,075,000) is the appropriate percentage for lead plaintiffs' counsel. "This determination is somewhat elastic and depends largely on the facts of a given case, but certain factors are commonly considered. Specifically, the court may address the

3

percentage likely to have been negotiated between private parties in a similar case, percentages applied in other class actions, the quality of class counsel, and the size of the award." In re Ikon, 194 F.R.D. at 193 (internal citations omitted). In Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000), the Third Circuit provided a list of factors to be considered in determining the reasonableness of a percentage fee award in common fund cases such as this one.

The first factor is the size of the fund created and the number of persons benefitted. Here $10.25 million in cash was recovered for a "large class of shareholders." Pl. Appl. at 4. More than 40,000 notices were mailed to potential class members. Mem. at 4. The amount of the cash settlement represents ten (10) percent of what plaintiffs believe the case was worth and twenty (20) percent of what defendants believe the case was worth. See Pl. Mem. in Support of Final Approval at 16.

The second factor, the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, weighs in favor of the requested thirty percent award of attorneys' fees. The notice mailed to all potential class members informed them that they had the right to object to the fee application and to the attorneys' fee request which would be up to one-third of the settlement amount (33 1/3%). Mem. at 4; Carney Aff. at 4. Out of more than forty-thousand notices mailed, only two class members objected to the fee request. As a result, this factor weighs strongly in favor of the requested attorneys' fee award. See Stoetzner v. United States

Steel Corp., 897 F.2d 115, 119 (3d Cir. 1990) (finding that where "only" 29 out of 281 total class members objected, the response "strongly favors the Settlement").

Additionally, neither of the objections to the fee award state that a request for fees in general would be unreasonable, that the settlement was not fair, reasonable and adequate, nor that lead counsel did not provide a substantial benefit. See Carney Aff. at 13-14.

The skill and efficiency of lead counsel is the third factor to consider and it weighs in favor of the thirty percent award. Lead counsels' biographies and the list of the Carney Williams' firm achievements reveal that the attorneys are nationally recognized class action litigators. Several of the firm's attorneys are also certified public accountants. Attorney Carney himself appears to have represented clients in at least seven (7) other securities class actions. Lead counsel managed the case efficiently. They responded to defendants' motion to dismiss, engaged in two mediation sessions, reviewed 100,000 pages of discovery and negotiated a settlement for the class members. Carney Aff. at 4-5. They spent more than three-thousand hours on this case. Carney Aff. at 15. Lead counsel spent more than $150,000 on out-of-pocket expenses at significant risk to themselves and with no guarantee of recovery. Carney Aff. at 16. This factor weighs in favor of the thirty percent attorneys' fee award counsel requests.

The fourth factor is the complexity and duration of the litigation. Here, lead

counsel negotiated an award of more than $10 million in just over a year,[1] during difficult economic times, and with a high scienter burden. It has been more than two years since the first class action against Sterling was filed in May 2007. Lead counsel have represented the class for almost two years during which time they responded to a non-frivolous motion to dismiss, engaged in mediation, undertook discovery and notified the large class of the settlement award. Their opponents were represented by attorneys at Covington & Burling, a highly-regarded law firm where many skilled securities class action litigators practice. There is no reason to believe this case was anything but vigorously defended. Plaintiffs' significant victory was not easily won.

The fifth factor is the risk of nonpayment. Lead counsel have prosecuted this case on an entirely contingent fee basis. Lead counsel's memorandum lists more than ten class actions in which the plaintiffs' counsel expended thousands of hours and advanced significant litigation expenses. See Mem. at 8-9. Here, lead counsel incurred more than $150,000 in expenses and undertook the risk of never receiving reimbursement.

The sixth factor is the amount of time lead counsel devoted to the case. More than three thousand hours were spent by lead counsel on this case. The lodestar for this case is $1,675,031.25. The affidavit submitted by Attorney Carney explains that counsel investigated the case, drafted the 114-page consolidated amended complaint, responded to the motion to dismiss which challenged every aspect of the complaint, consulted with

---

[1] The amended complaint was filed in February 2008 and a preliminary settlement proposal was filed in March 2009.

experts, reviewed 100,000 pages of documents in preparation for settlement and mediated the case in at least two adversarial sessions. See generally, Carney Aff.

The final factor is the amount of awards in similar cases. This factor also weighs in favor of lead counsel's request for thirty percent. "[M]ost fees appear to fall in the range of nineteen to forty-five percent. The median in class actions is approximately twenty-five percent, but awards of thirty percent are not uncommon in securities class actions." In re Ikon 194 F.R.D. at 194 (citing awards in this district). Even "in private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." Id. (citing cases).

Lead counsel spent 3327.9 hours on this case, for a total bill of $1,675,031.25. See Carney Aff. at 15. As calculated by lead counsel, the initial lodestar would be subject to a multiplier of approximately 1.84 to reach the percentage amount. Mem. at 11. The hours do not appear to be inflated, and the hourly rates are appropriate. A multiplier of 1.84 is within the range of awards in similar cases, particularly given the substantial risk undertaken by class counsel, the large amounts of attorney time and money expended, and the good result obtained for the class. See, e.g., In re Prudential, 148 F.3d at 341.

Lead counsel cite a number of district court cases in which multipliers of 4 or less are within the range awarded by courts within the Third Circuit. See, e.g., Martin v. Foster Wheeler Energy Corp., 2008 U.S. Dist. LEXIS 25712, 21 (M.D. Pa. Mar. 31,

2008) (stating "Lodestar multipliers of less than four (4) are well within the range awarded by district courts in the Third Circuit" and awarding thirty percent where the lodestar multiplier was 2.17); Meijer, Inc. v. 3M, 2006 U.S. Dist. LEXIS 56744, 81-82 (E.D. Pa. Aug. 15, 2006) (stating that "the Court finds that . . . the requested lodestar multiple of 4.77 is acceptable"); Stop & Shop Supermarket Co. v. Smithkline Beecham Corp., 2005 U.S. Dist. LEXIS 9705, 60 (E.D. Pa. May 20, 2005) (awarding 15.6 multiplier); In re Aetna Inc. Sec. Litig., 2001 U.S. Dist. LEXIS 68, 49-50 (E.D. Pa. Jan. 4, 2001) (awarding 3.6 multiplier).

Additionally, while this case appears to have merit, plaintiffs faced a risk of not prevailing at trial as a result of their legal burdens. They would have had to establish scienter, damages and causation. The In re Ikon court noted that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." In re Ikon, 194 F.R.D. at 194 (citing Elliot J. Weiss & Janet Moser, "Enter Yossarian: How to Resolve the Procedural Catch-22 that the PSLRA Creates," 76 Wash. U.L.Q. 457 (1998); Eugene Zelensky, "New Bully on the Class Action Block," 73 Notre Dame L.Rev. 1135 (1998)). For example, the PSLRA changed the legal standard for securities fraud claims in ways that make it more difficult for a plaintiff to prevail. See 15 U.S.C. § 78u-4(b). It also restricts the type of plaintiffs who may represent the class and requires courts to intervene in the decision of who may serve as lead counsel. See 15 U.S.C. § 78u-4(a)(2), (3).

After weighing the factors above, it is apparent that a thirty percent attorneys' fee award is reasonable. Cross-checked against the lodestar calculation, the award is still reasonable. While it appears to be a fair settlement, the settlement fund is not so large as to support a percentage smaller than thirty percent. "Courts have generally decreased the percentage awarded as the amount recovered increases, and $100 million seems to be the informal marker of a 'very large' settlement." In re Ikon at 195 (citing In re Prudential, 148 F.3d at 339; In re Computron, 6 F.Supp.2d at 323; In re Greenwich, 1995 WL 251293, at *7). Here, the settlement amount is one-tenth of the amount at which a settlement is considered "very large."

## IV. CONCLUSION

For the foregoing reason, lead counsel's application for attorneys' fees in the amount of thirty (30) percent of the total award or $3,075,000 plus interest will be granted. Counsel's request for the expenses to be taken from the settlement fund, however, will be denied. The expenses of this litigation are to be taken from the thirty (30) percent award of attorneys' fees.

An appropriate Order follows.